18007

Gladys A. EBERHARDT, Appellant, v. G. D. FORRESTER and James P. Clardy, d/b/a Forrester & Clardy and William Harry Smith, Respondents, G. D. FORRESTER and James P. Clardy, d/b/a Forrester & Clardy, Respondents, v. J. V. EBERHARDT and Gladys A. Eberhardt, Appellants.

(128 S. E., (2d) 687)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Appellants,*

*Messrs. Love, Thornton & Arnold,* of Greenville, *for Respondents,*

December 17, 1962.

BUSSEY, Justice.

J. V. Eberhardt, accompanied by his wife, Gladys A. Eberhardt, was driving a Chrysler automobile (the property of his wife) in an easterly direction along West Faris Road in the City of Greenville, South Carolina, when involved in a collision with a Chevrolet automobile owned by G. D. Forrester and James P. Clardy, d/b/a Forrester & Clardy, used car dealers, and operated by William Harry Smith, a prospective purchaser, in a northerly direction on Brookview Circle. As a result of this collision both vehicles were damaged and Gladys A. Eberhardt sustained serious bodily injuries.

Gladys A. Eberhardt instituted action against G. D. Forrester and James P. Clardy, d/b/a Forrester & Clardy and William Harry Smith; and G. D. Forrester and James P. Clardy, d/b/a Forrester & Clardy instituted an action against J. V. Eberhardt and Gladys A. Eberhardt. J. V. Eberhardt counterclaimed to the latter action, and by consent of counsel for each of the parties, the actions were consolidated for trial.

The consolidated cases were tried before the Judge of the County Court and a jury, and during the course of the trial

appellants sought, both on direct and cross-examination, to question witness about remarks of William Harry Smith to James P. Clardy at the scene of the accident pertaining to the brakes on the Chevrolet automobile. Upon objection, the trial judge ruled such evidence inadmissible.

At the conclusion of the testimony, the respondents moved for a directed verdict as to the actions asserted against G. D. Forrester and James P. Clardy, d/b/a Forrester & Clardy, which was granted, thus dismissing the counterclaim of J. V. Eberhardt to which William Harry Smith was not a party, and submitting the cause of Gladys A. Eberhardt to the jury only as against William Harry Smith.

The jury returned a verdict in favor of Forrester and Clardy, for damage to the Chevrolet automobile, and a verdict in favor of the defendant William Harry Smith in the action by Gladys A. Eberhardt. The appellants, Eberhardt, made timely motions for a new trial, which were denied.

West Faris Road extends from some undesignated point outside the city limits of Greenville into the city and on up to Augusta Street in the City of Greenville. The distance from the city limits to Agusta Street does not appear in the record, but it does appear that there are a number of streets intersecting West Faris Road between the city limits and Augusta Street. Just after entering the city limits of Greenville, the first intersecting street to the south in known as Brookview Circle, and the extension thereof to the north of West Faris Road is known as Melville Avenue. Brookview Circle is a circle off Faris Road and re-enters the same at a point other than the intersection where the collision occurred.

Prior to the time of the collision and subsequently thereto, stop signs were in place on all streets intersecting West Faris Road between the city limits and Augusta Street, thus constituting West Faris Road within the city limits of Greenville a "through highway" within the

purview of the applicable statute. Code Section 46-252. However, at the time of the collision the stop sign on Brookview Circle at the entrance to West Faris Road was not in place and had evidently been removed and not yet replaced in the course of widening Brookview Circle. Exactly when the sign was removed or replaced does not appear in the record.

Eberhardt was familiar with West Faris Road and considered it a through street. There is nothing in the record to indicate that he had any knowledge that the stop sign on Brookview Circle was temporarily missing. On the other hand, Smith testified that he was not familiar with the area, but that in trying out the Chevrolet he had, shortly before the collision, crossed the intersection going south into Brookview Circle.

There is conflict in the testimony as to the relative speeds of the two vehicles and the manner of approaching the intersection by the two drivers. There is evidence to the effect that the Chevrolet laid down skid marks of twenty-six feet before coming in contact with the Chrysler, and the front portion of the Chevrolet came in contact with the right front door of the Chrysler, the evidence reflecting a considerable impact. There is evidence to the effect that the streets were damp at the time of the collision and that there was some loose gravel on the street surface.

We have not reviewed all of the evidence, but the foregoing is, we think, sufficient for the purpose of discussing the questions necessary to be decided.

The exceptions are numerous, but some of them have been abandoned, leaving only three questions which we think necessary and proper to decide.

Appellants offered to prove that when the defendant Clardy arrived at the scene of the accident, some fifteen or twenty minutes thereafter, Mr. Smith told Mr. Clardy that "These brakes are the hardest on this car that I have ever seen—on any car I have ever driven", to which Mr. Clardy allegedly replied, "When the car left the

shop the brakes were ok." The trial judge ruled this line of testimony inadmissible and refused to allow it to be taken in the presence of the jury. He also ruled that counsel for appellants could not cross examine either Smith or Clardy about the conversation which allegedly took place between them. Just what the defendant Smith meant by the quoted statement is not clear, but it is certainly inferable that he meant the brakes were not in good working order, and this is particulary true in view of his testimony to the effect that he was not going more than ten or fifteen miles per hour at the time he applied the brakes, but still laid down skid marks of twenty-six feet and came into contact with the Chrysler with considerable force.

In this ruling we think the trial judge was clearly in error. The statement, unexplained, was certainly in the nature of an admission that the brakes were not in good order, made by the defendant to another defendant. The statement was clearly admissible as against the defendant Smith, and the other defendants were not entitled to have the same excluded. They were entitled only to a ruling or instruction thereabout. Any such statement on the part of Smith would be evidence to be considered against the other defendants only to whatever extent the evidence showed the same had been acquiesced in or adopted by Clardy.

The next question for consideration is whether the judge correctly charged the jury with respect to the respective rights and duties of the parties in approaching and entering the intersection; and particularly as to the right of way at the intersection, under the facts disclosed by the evidence. The respondents took the position that neither street was at the time a "through highway" and that the rights and duties of the parties were controlled by that portion of Sec. 46-421 of the Code reading as follows:

"The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. When two vehicles enter an intersection from different highways at approxi-

mately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

The trial judge, in accordance with respondents' contention, charged repeatedly and specifically that neither of the streets was a through street and charged Sec. 46-421, but instructed the jury that the last sentence thereof, reading: "The right of way rules declared in this section are modified at through highways and otherwise as stated in this article", was not applicable and should not be considered. He refused to charge Sec. 46-423 of the Code as follows:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the driver of all other vehicles approaching the intersection on such through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

In the course of the trial the judge allowed evidence to the effect that Eberhardt thought or considered he was on a through highway and that stop signs were placed at all other intersections of West Faris Road within the city, as having a bearing only on the issue of whether Mr. Eberhardt was guilty of willfullness, and so instructed the jury. The appellants took the position that West Faris Road was a "through street" and that the temporary absence of the stop sign on Brookview Circle did not change the character thereof.

As above pointed out, there is no question that West Faris Road was a through street, within the contemplation of the statute, for its entire length from the city limit to Augusta Street, prior to the collision. The real question, therefore, was whether the temporary removal of the stop sign caused Faris Road to completely lose its character as a through

highway. Or, stated broadly, what were the respective rights and duties of the parties with respect to the right of way at the particular intersection under the facts and circumstances disclosed by the evidence?

In fairness to the trial judge, it should be said that the requests and objections of counsel did not present the real issues to the trial judge as clearly as they might have. Nevertheless, we think the charge did not clearly set forth the respective rights and duties of the parties under the circumstances and was prejudical to the appellants here.

This court has not heretofore had occasion to consider the effect of the temporary absence of a stop sign protecting the intersection to an otherwise "through highway", but the question under various factual situations has been before many courts. The weight of authority from other jurisdictions supports the following general principles, which we consider to be sound.

1. Once a through street or arterial highway has been properly designated and appropriate signs have been erected, the preferred status of the highway is not lost merely because a stop sign is misplaced, improperly removed, destroyed or obliterated.

2. A motorist on a preferred highway is entitled to assume that a vehicle approaching on a secondary highway will stop for the intersection, unless he has knowledge of the absence of the sign, or he is otherwise put on notice that the vehicle on the intersecting street is not going to stop.

3. A motorist on a secondary highway is required to stop if he has knowledge of the nature of the preferred highway, even though the sign is absent.

4. A motorist on a secondary highway is not required to stop in the temporary absence of a stop sign, if he does not have knowledge of the character of the preferred highway, but may still be liable if he is otherwise negligent.

See 5A Am. Jur., Automobiles, Sec. 328; *Schmit v. Jansen*, 247 Wis. 648, 20 N. W. (2d) 542, 543, 162 A. L. R. 925; *Bell v. Crook*, 168 Neb. 685, 97 N. W. (2d) 352; 74 A. L. R. (2d) 223, and numerous cases referred to in said annotation.

In our view, the causes should have been submitted to the jury in accordance with the foregoing principles, and it was error to charge the jury that neither street here was a through street and that the rights and duties of the parties with reference to the intersection were controlled only by a portion of Sec. 46-421.

The remaining question to be decided is whether the trial judge should have directed a verdict in favor of Forrester and Clardy as to the cases of both Mr. and Mrs. Eberhardt, and in this connection, it is elementary that the evidence has to be viewed in the light most favorable to the appellants.

Pleadings on the part of the appellants were based on the theory that the relationship of master and serant, or principal and agent, existed as between Forrester and Clardy and the defendant Smith. The pleadings on behalf of the respondents set up the relationship as that of bailor and bailee, rather than that of master and servant and the evidence reflects only the relationship of bailor and bailee. The respondents Forrester and Clardy moved for a directed verdict on the ground that there was no proof of the relationship of principal and agent, and also the ground that the evidence was insufficient to go to the jury against these defendants as bailors. A directed verdict was granted on both grounds, and with respect to the first ground, it is clear from the record that the trial judge was correct. Whether his ruling on the second ground was correct is a much more difficult question, and the precise question has not heretofore been before this court.

Respondents rely in part on the case of *Howle v. McDaniel*, 232 S. C. 125, 101 S. E. (2d) 255. We think, how-

ever, that the case is clearly distinguishable from the instant case for several reasons. The nature of the bailment in that case was completely different, and the negligence, if any, of the bailor was held to be too remote to be considered a proximate cause of the accident.

Here, we have a bailment for mutual benefit, and the respondents concede that under the factual circumstances a bailor is liable if there was a defect in the automobile which was a proximate cause of the collision, and the bailor either knew of the defect or by the exercise of reasonable diligence would have known of the defect. In this connection see various cases in *Runnelo v. Dixie Drive-It-Yourself System Jackson Co.*, 220 Miss. 678, 71 So. (2d) 453, 46 A. L. R. (2d) 397 *et seq.*, as well as 6 Am. Jur., Bailments, Sec. 316. A leading case is that of *Al DeMent Chevrolet Co. v. Wilson*, 252 Ala. 662, 42 So. (2d) 585, wherein a prospective purchaser was trying out a used car, as in the instant case. We quote the following from that decision:

"In order to establish a *prima facie* case, i. e. one sufficient to go to the jury, there must be some substantial evidence tending to show: (1) That the brakes were defective (2) that such defective condition of the brakes was the proximate cause of the injury; (3) that the defendant knew or by the exercise of reasonable care ought to have known that the brakes were defective at the time the automobile was delivered * * *."

We think the applicable law is well established by the weight of authority from other jurisdictions and the question here is simply whether the evidence, viewed in the light most favorable to the appellants, was sufficient to entitle them to go to the jury on the issue of liability as to the bailor. The only basis of liability upon the bailor here is the contention of the appellants that the brakes on the Chevrolet were defective. Since the trial judge, on both direct and cross examination, erroneously excluded certain evidence with respect to the brakes, we do not feel that we should pass upon the sufficiency of the evidence in the absence of all of the relevant, admissible evidence.

For the reasons herein set forth, the judgment of the lower court is reversed and the cases remanded for a new trial or trials of the issues existing between all of the parties to the cases.

Reversed and remanded.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.